UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| LINDA A. MILLER, M.D., | ) | CIV. 12-4138-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER GRANTING |
| HURON REGIONAL MEDICAL | ) | DEFENDANT PROASSURANCE'S |
| CENTER, INC., | ) | MOTION TO DISMISS |
| CY B. HAATVEDT, M.D., as a | ) | |
| Member of its Executive Committee | ) | |
| and Individually, | ) | |
| MICHAEL H. BECKER, M.D., as a | ) | |
| Member of its Executive Committee | ) | |
| and Individually, and | ) | |
| PROASSURANCE CASUALTY | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

Defendant ProAssurance Casualty Company moves to dismiss Dr. Linda Miller's claim for interference with business relationships and expectations, which is the sole claim alleged against ProAssurance in Miller's First Amended Complaint. ProAssurance argues that Miller failed to state a claim upon which relief can be granted and that her claim should therefore be dismissed under Federal Rule of Civil Procedure 12(b)(6). Miller resists the motion. For the following reasons, the motion is granted.

## FACTS

The facts, according to the First Amended Complaint (Docket 81), pertinent to this order are as follows:

Miller is a general surgeon who began working at Huron Regional Medical Center (HRMC) in February 2004. Miller and HRMC entered into a contract in February 2009, in which Miller would act as an independent contractor at HRMC.

HRMC's executive committee began a review of 100 percent of Miller's patient charts on October 18, 2010. The review was initially intended to last three months but was extended for an additional three months in January 2011. On February 7, 2011, the executive committee instructed HRMC's quality risk management (QRM) director to send the medical records of one of Miller's surgical patients out for an independent external peer review.

HRMC's QRM director contacted ProAssurance on or about February 15, 2011, to assist in obtaining the external peer review. ProAssurance was the professional liability insurance carrier for HRMC. Upon the request from HRMC's QRM director, ProAssurance implemented its claims procedure, part of which included assigning a claim number to the file and a claims team. On February 21, 2011, the QRM director informed the executive committee that the peer review may take 60 days and then on March 21, 2011, informed the executive committee that it may take an additional 30 to 45 days.

While ProAssurance was conducting the external review, Miller was coerced by HRMC's executive committee to request that her privileges be reduced, unaware that HRMC intended to report her request for reduction in privileges to the South Dakota Medical Board and the National Practitioner Data Bank (NPDB). Shortly after Miller requested a reduction in her privileges, HRMC informed Miller that the event needed to be reported to the NPDB because there was an external review taking place when she requested her reduction in privileges. Later Miller's OB-GYN privileges were terminated by HRMC's executive committee, which was also reported to the NPDB. Shortly thereafter, HRMC's CEO met with Miller and told her that if she did not voluntarily resign she would be terminated. To avoid another negative report on her record, Miller submitted her resignation on April 29, 2011.

Eventually, ProAssurance provided HRMC with a letter dated June 10, 2011, that was prepared by a claims specialist summarizing the contents of the external review in language largely favorable to HRMC and Miller. ProAssurance did not provide the specific report of the physician who conducted the independent external peer review to either HRMC or Miller.

At all times, ProAssurance was aware of the business relationships and expectations between Miller and HRMC. Further, ProAssurance was aware of the negative impact filing an adverse action report with NPDB has on a physician's career and ability to obtain employment. Miller claims, "ProAssurance's delay in

3

providing its summary of the external review resulted in the decision of HRMC to file an adverse action report with the NPDB against Miller."

## STANDARD OF REVIEW

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court assumes that all facts in the complaint are true and construes any reasonable inferences from those facts in the light most favorable to the nonmoving party. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). The court need not accept a plaintiff's legal conclusions. *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010). To decide the motion to dismiss, the court may consider the complaint, some materials that are part of the public record, and materials embraced by the complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). The complaint must contain "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual content in the complaint must "allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Braden v. Wal-Mart Stores*, 588 F.3d 585, 594 (8th Cir. 2009).

## DISCUSSION

The sole claim alleged against ProAssurance in Miller's First Amended Complaint is a claim for tortious interference with a business relationship or

expectancy. The elements of a claim for tortious interference with a business relationship include:

> (1) the existence of a valid business relationship or expectancy;
>
> (2) knowledge by the interferer of the relationship or expectancy;
>
> (3) an intentional and unjustified act of interference on the part of the interferer;
>
> (4) proof that the interference caused the harm sustained; and
>
> (5) damages to the party whose relationship or expectancy was disrupted.

*Selle v. Tozser*, 786 N.W.2d 748, 753 (S.D. 2010). One is liable for tortious interference with a business relationship "if he interferes with business relations of another, *both existing and prospective*, by inducing a third person not to enter into or continue a business relation with another or by preventing a third person from continuing a business relation with another." *Setliff v. Akins*, 616 N.W.2d 878, 889 (S.D. 2000).

ProAssurance contends that Miller's First Amended Complaint fails to set forth sufficient facts to support element three: that there was an intentional and unjustified act of interference on the part of ProAssurance.

The references to ProAssurance in the First Amended Complaint are limited.[1] Miller alleges that ProAssurance was contacted by HRMC's QRM director around February 15, 2011, to assist in obtaining an external peer review even though the professional liability insurance policy HRMC has with ProAssurance does not include a peer review endorsement. Docket 81 at ¶¶ 39, 44. Upon this request, ProAssurance implemented its claims procedure, part of which included assigning a claim number to the file and a claims team. *Id.* at ¶ 43.

While ProAssurance was conducting the external review, Miller was coerced by HRMC's executive committee to request that her privileges be reduced, unaware that HRMC intended to report her request for reduction in privileges to the South Dakota Medical Board and the NPDB. *Id.* at ¶¶ 50, 51. HRMC then informed Miller that the event needed to be reported to the NPDB because there was an external review taking place when she requested the reduction in her privileges. *Id.* at ¶ 52.

---

[1] In her response brief, Miller includes several factual assertions in support of her argument that were not included in her First Amended Complaint, are not part of the public record, are not embraced by the complaint, and of which the court has not taken judicial notice. She requests that the court consider those facts because they are "within the Court's record," or in other words, included in the docket. Docket 102 at 4 n.2. But the mere fact that a party has submitted a filing on the docket does not compel the court to consider said filing when deciding a motion. Indeed, in deciding a motion to dismiss under Rule 12(b)(6), the court is only permitted to consider a limited number of items. Therefore, the court ignores many of the factual assertions included in Miller's response brief because they do not fall within the scope of what the court may consider when ruling on a Rule 12(b)(6) motion to dismiss.

Miller's OB-GYN privileges were terminated later by HRMC's executive committee. *Id.* at ¶¶ 53, 54. This event was also reported to the NPDB. *Id.* at ¶ 55. Shortly thereafter, HRMC's CEO met with Miller and told her that if she did not voluntarily resign she would be terminated. *Id.* at ¶ 57. Miller submitted her resignation on April 29, 2011. *Id.* at ¶ 58.

ProAssurance provided HRMC with a letter dated June 10, 2011, that was prepared by a claims specialist summarizing the contents of the external review in language largely favorable to HRMC and Miller. *Id.* at ¶ 45. ProAssurance did not provide the report of the physician retained to conduct the independent external peer review to either HRMC or Miller. *Id.* at ¶ 45. At all times, ProAssurance was aware of the business relationships and expectations between Miller and HRMC as well as the negative impact filing an adverse action report with NPDB has on a physician's career and ability to obtain employment. *Id.* at ¶¶ 86, 87. Miller claims, "ProAssurance's delay in providing its summary of the external review resulted in the decision of HRMC to file an adverse action report with the NPDB against Miller." *Id.* at ¶ 89. The remainder of Miller's allegations pertaining to ProAssurance are nothing more than legal conclusions that the court need not accept as true. *Brown*, 628 F.3d at 459.

The issue is whether the aforementioned factual allegations allow the court to draw a reasonable inference that ProAssurance committed an intentional and

unjustified act of interference. Noticeably, Miller's allegations pertaining to ProAssurance include very few "acts" performed by ProAssurance. Nevertheless, Miller suggests that two of ProAssurance's acts constitute intentional and unjustified acts of interference. First, Miller takes issue with the amount of time it took ProAssurance to complete the external review. *See* Docket 81 at ¶¶ 88, 89. She claims that the amount of time it took for ProAssurance to complete the review equates to a breach of ProAssurance's "duty to facilitate the external review in a reasonable and prudent manner." *Id.* at ¶ 91. Second, Miller claims ProAssurance's "refusal to provide the report of the physician conducting the external review constitutes breach of ProAssurance's duty to facilitate the external review in a reasonable and prudent manner." *Id.* at ¶ 90; *see also id.* at ¶ 91.

Both of Miller's arguments are premised on a "duty" she claims ProAssurance owed to her to facilitate its external review in a reasonable and prudent manner. In her response brief, Miller claims § 324A of the Restatement (Second) of Torts sets out the applicable duty owed to her. Docket 102 at 11 n.4. Section 324A provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> > (a) his failure to exercise reasonable care increases the risk of such harm, or

>  (b) he has undertaken to perform a duty owed by the other to the third person, or
>
>  (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Miller argues that ProAssurance, by agreeing to perform the external review, took on a duty owed to Miller to perform the review in a reasonable and prudent manner.

Miller's attempted use of § 324A to allege liability against ProAssurance fails for a few reasons. First, § 324A imposes liability "for physical harm resulting from [a defendant's] failure to exercise reasonable care to protect [a claimant's] undertaking[.]" There are no allegations of physical harm resulting from ProAssurance's conduct. Indeed, § 766C of the Restatement (Second) of Torts provides:

>  One is not liable to another for pecuniary harm not deriving from physical harm to the other, if that harm results from the actor's negligently
>
>  (a) causing a third person not to perform a contract with the other, or
>
>  (b) interfering with the other's performance of his contract or making the performance more expensive or burdensome, or
>
>  (c) interfering with the other's acquiring a contractual relation with a third person.

*See also Drier v. Great Am. Ins. Co.*, 409 N.W.2d 357, 362 (S.D. 1987) (citing Restatement (Second) of Torts, § 766C with approval), *receded from on other grounds by*

*Dunes Hospitality, LLC v. Country Kitchen Int'l, Inc.*, 623 N.W.2d 484 (S.D. 2001). Without physical harm resulting from ProAssurance's conduct, § 324A is inapposite whereas § 766A is on point. Second, Miller fails to identify how ProAssurance's external review was necessary for Miller's protection. The purpose of peer review is "to improve the delivery and quality of services within" healthcare facilities, not to protect a physician who is being reviewed. SDCL 36-4-43. Thus, § 324A does not assist Miller in her attempt to state a claim upon which relief can be granted.

To sufficiently plead tortious interference with business relationships and expectations, Miller needed to allege facts indicating intentional and unjustified interference on the part of ProAssurance. Miller's First Amended Complaint falls short. There are no alleged facts to show that ProAssurance *intended* to interfere with Miller's employment or business relationships. Miller's own language, i.e., "ProAssurance's breach of its duty to facilitate the external review in a reasonable and prudent manner," Docket 81 at ¶ 91, sounds in negligence. A claim for interference with business relationships and expectations requires more than mere negligence, there must be intentional acts. *See Selle*, 786 N.W.2d at 753 (requiring an "intentional and unjustified act of interference on the part of the interferer"); *Drier*, 409 N.W.2d at 362 ("We note recovery for negligent wrongful interference with a business relationship is generally disallowed."); Restatement (Second) of Torts,

§ 766C. For this reason, Miller failed to state a claim upon which relief can be granted. Accordingly, it is

ORDERED that defendant ProAssurance's motion to dismiss (Docket 92) is granted without prejudice.

Dated April 22, 2014.

                        BY THE COURT:

                        /s/  *Karen E. Schreier*
                        KAREN E. SCHREIER
                        UNITED STATES DISTRICT JUDGE