UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| LINDA A. MILLER, M.D.;<br><br>Plaintiff,<br><br>vs.<br><br>HURON REGIONAL MEDICAL CENTER, INC.,<br><br>Defendant. | 4:12-CV-04138-KES<br><br>ORDER DENYING DEFENDANT'S MOTION FOR REMITTITUR OR FOR NEW TRIAL |

Plaintiff, Dr. Linda A. Miller, filed this action against defendant, Huron Regional Medical Center (HRMC), for breach of contract and defamation. The case proceeded to a jury trial where the jury found in favor of Dr. Miller on her breach of contract claim and in favor of HRMC on the defamation claim. Docket 285. The jury awarded Dr. Miller $586,617 in lost wages incurred before trial and $343,640 for future loss of earning capacity. *Id.* The jury also awarded $250,000 for pain and suffering that the parties agreed was improper for a breach of contract claim, and the court struck the award from the verdict. Docket 283. HRMC now moves for remittitur or for a new trial. Docket 290. Dr. Miller opposes the motion. Docket 295.

# FACTUAL BACKGROUND[1]

At trial, Dr. Miller alleged that HRMC violated its Medical Staff Bylaws because "HRMC implemented corrective action through [another doctor's] request to her to voluntarily reduce her surgical privileges." Docket 155 at 10. A Surgical Services Agreement (SSA) and HRMC's Bylaws governed the terms of Dr. Miller and HRMC's contract. Docket 155 at 2. HRMC's Bylaws was an enforceable contract that created a procedural right to a hearing where Dr. Miller could have defended any concerns about her standard of care. *Id.* at 11. Thus, HRMC's actions violated its Bylaws because Dr. Miller was entitled to a hearing but never received one. *Id.* at 10-11. The jury found in favor of Dr. Miller on her claim that HRMC violated its Bylaws. Docket 277. Dr. Miller never alleged that HRMC violated any part of the SSA. Dr. Miller also claimed defamation based on HRMC's report to the National Practitioner Data Bank (NPDB) that gave notice of Dr. Miller's voluntary reduction of surgical privileges. The jury found in favor of HRMC on the defamation claim. Docket 277.

## Settling Jury Instructions

Prior to presenting the jury with the court's Final Jury Instructions, the court settled the instructions with both parties present at two separate hearings. Docket 293. At the May 5, 2017 hearing, HRMC did not object to the court's Final Jury Instruction Number 10 on "Breach of Contract –

---

[1] The following factual background is derived from the pleadings, affidavits, motions, and transcripts. The background is limited in scope to facts relevant to defendant's motion for remittitur or for a new trial on the issues of breach of contract damages and Dr. Huntoon's testimony.

Compensatory Damages," Final Jury Instruction Number 14 on "Future Damages," or to the court's Verdict Form. *Id.* 7:14, 14:22-14:23, 22:22. Further, Dr. Miller specifically stated at the hearing that she was seeking past and future lost wages. *Id.* 19:18-19:21. When discussing the Verdict Form, the court asked plaintiff's attorney, "So on the breach of contract claim, are you seeking anything other than lost wages?" *Id.* 19:18-19:19. Attorney Wilson, representing Dr. Miller, responded, "No – I misspoke, your Honor. Past and future wages on the contract claim." *Id.* 19:20-19:21. Plaintiff's counsel then expressed some concern over the damages section of the Verdict Form in the event that the jury found in favor of Dr. Miller on the breach of contract claim but against her on the defamation claim. In response, the court proposed editing the Verdict Form to have a general section of damages that included a space for lost wages, loss of earning capacity, and mental anguish.[2] The court

---

[2] The hearing proceeded as follows:
> The Court: So what if instead of having compensatory damages right after breach of contract, that says you decide the issue of breach of contract first, decide defamation second, and then the third question would be, if you found in favor of Dr. Miller on either the breach for contract claim or the defamation claim, determine the total amount of damages, if any, for lost wages, loss of earning capacity and mental anguish. Docket 293 19:22-20:04.
> Mr. Wilson: I think that would be perfect. *Id.* 20:08.
> Ms. Raymond: I'm not sure I followed, but there's no mental anguish damages for the breach of contract, correct? *Id.* 20:09-20:10.
> The Court: Right. So if they only found in favor of her on breach of contract, but against her on defamation and they awarded mental anguish, I would find that that's not proper and send it back to them. *Id.* 20:11-20:14.

3

explained that if the jury improperly awarded damages for mental anguish, the court would simply void the award. Both parties agreed to the suggested change.

The court then made the changes discussed at the May 5th hearing and emailed the instructions with the changes to the parties over the weekend. *Id.* 31:23-32:09. At the May 8, 2017 hearing, the parties went over the Final Jury Instructions and neither party objected to Final Jury Instructions Numbers 10 or 14 or to the Verdict Form. *Id.* 33:1-33:25.

### Dr. Huntoon's Expert Testimony at Trial

During the trial, Dr. Lawrence Huntoon, one of Dr. Miller's experts, testified as to why HRMC's actions were indicative of a sham peer review. Dr. Huntoon's expert disclosure identified[3] that, in his opinion, HRMC conducted a sham peer review of Dr. Miller because: (1) the Medical Executive Committee (MEC) conducted a "review" of Dr. Miller under Section I.C. of the Bylaws; (2) the "review" was not done in anticipation of a corrective action; (3) a request for a corrective action would have required an investigation under the Bylaws; (4) no "investigation" as defined in the Bylaws ever occurred; (5) HRMC

---

    Mr. Wilson: And as far as the Plaintiff is concerned, you wouldn't have to send it back. I'm not sure what your procedure is. *Id.* 20:18-20:20.
    The Court: I would just make it null and void. *Id.* 20: 21.
    Ms. Raymond: Just strike that allocation of that amount since it's not a basis of recovery? *Id.* 20:22-20:23.
    The Court: Right. *Id.* 20:24.
    Ms. Raymond: I'll defer to your judgment, your Honor. *Id.* at 20:25.

[3] Because Dr. Huntoon's report is 98 pages, the court summarized what Dr. Huntoon's report stated based on his own summary found at Docket 175-2 at 34-35.

manipulated the language of meeting minutes to convert the term "review" to "investigation" in an attempt to explain the wrongful report to the NPDB; (6) and HRMC took an adverse action against Dr. Miller when it coerced her to reduce her privileges at the hospital. Docket 175-2 at 34-35. Specifically, Dr. Huntoon's report contains a section titled "Tactics Characteristic of Sham Peer Review Identified in This Case" that includes a sub heading titled "Violation of Medical Staff Rules and Regulations," which details all of the provisions of the Bylaws that Dr. Huntoon believed HRMC violated. *Id.* at 39-45.

HRMC now moves for remittitur or, alternatively, for a new trial because the jury's award of damages is not supported by South Dakota law, and one of Dr. Miller's experts, Dr. Huntoon, testified at trial outside the scope of the opinions stated in his expert witness disclosure. Docket 290; Docket 291.

## DISCUSSION

### I. Objections to Final Jury Instructions and Verdict Form

To the extent that HRMC objects to the court's Final Jury Instructions and Verdict Form, it has failed to preserve the issues raised in the motion. "In order to properly preserve a claim of instructional error for appellate review, a party is not only required to make a sufficiently precise objection before the district court, but it must also propose an alternate instruction." *Caviness v. Nucor-Yamato Steel Co.*, 105 F.3d 1216, 1220 (8th Cir. 1997) (quoting *Kehoe v. Anheuser–Busch, Inc.*, 96 F.3d 1095, 1104 (8th Cir. 1996)). Federal Rule of Civil Procedure 51(c)(1) states that "[a] party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the

5

matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). Where a party fails to preserve an issue at trial, the remaining question for the court is whether the instruction constitutes plain error. *Lincoln Composites, Inc. v. Firetrace USA, LLC*, 825 F.3d 453, 462 (8th Cir. 2016).

### A. Failure to Object at Trial

HRMC never objected to the court's Final Jury Instructions Numbers 10 or 14, to the Verdict Form, or to plaintiff's stated intention to pursue future damages related to the breach of contract claim. HRMC states that it agrees that the court's jury instructions are correct statements of law (Docket 298 at 4), but that it was unforeseeable that the jury would "confuse" the instructions and "erroneously" award Dr. Miller damages for lost wages and loss of earning capacity on her breach of contract claim. *Id.* Thus, HRMC argues, it could not object because "there is simply no procedure for objecting to such error." *Id.* at 6.

HRMC's argument that it could not have properly objected because the jury's award of lost wages and loss of earning capacity for Dr. Miller's breach of contract claim was unforeseeable, is unfounded. During the jury instruction settlement hearing, plaintiff's counsel specifically discussed the possibility of the jury finding in favor of Dr. Miller on her breach of contract claim, but not her defamation claim, and what effect that would have on any award of damages. *See* Docket 293 18:4-19:17. The court then clarified with plaintiff's counsel what damages plaintiff was seeking on the breach of contract claim asking, "So on the breach of contract claim, are you seeking anything other

6

than lost wages?" *Id.* 19:18-19:19. Plaintiff's counsel responded, "No—I misspoke, your honor. Past and future wages on the contract claim." *Id.* 19:20-19:21. The court then went on to propose structuring the damages section of the verdict form to state, "If you found in favor of Dr. Miller on either the breach of contract claim or the defamation claim, determine the total amount of damages, if any, for lost wages, loss of earning capacity and mental anguish."[4] *Id.* 19:25-20:4.

Defendant's counsel did not object or raise any concern at that time with counsel's statement or with the court's suggested alteration. In fact, defendant's counsel only clarified that there was no mental anguish damages for the breach of contract claim, and that if the jury did incorrectly award mental anguish damages on the breach of contract claim, that the court would strike that allocation.[5] *Id.* 20:9-20:25. Defendant's counsel did not raise any objection to the jury awarding future damages on the breach of contract claim or argue that the court should strike such an award in the event that the jury awarded future damages on the breach of contract claim. Thus, defendant had ample notice that plaintiff sought damages for lost wages and loss of earning capacity on her breach of contract claim and failed to object. Because HRMC

---

[4] This is the language that was eventually adopted in the final verdict form. *See* Docket 276.

[5] It is worth noting that this exact factual scenario is what the jury ended up awarding. The jury found in favor of Dr. Miller on her breach of contract claim but found in favor of HRMC on her defamation claim. Docket 276. And the jury awarded Dr. Miller damages for lost wages, loss of earning capacity, and mental anguish. *Id.* The court, based on a stipulation from the parties, entered an order striking the damages for mental anguish. Docket 282.

7

failed to preserve the issue at trial, the court's review is limited to whether the instructions constitute plain error.

   B.   **Plain Error**

HRMC argues that a plain error occurred in this trial because the jury erroneously applied the future damages instruction to the breach of contract claim. Docket 298 at 9. "Plain error is a stringently limited standard of review," and must result in a miscarriage of justice in order to compel reversal. *Horstmyer v. Black & Decker, (U.S.), Inc.*, 151 F.3d 765, 771 (8th Cir. 1998) (quoting *Rush v. Smith*, 56 F.3d 918, 925 (8th Cir. 1995)). The court considers whether "the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." *Amplatz v. Cty. Mut. Ins. Co.*, 823 F.3d 1167, 1173 (8th Cir. 2016) (quoting *Horstmyer*, 151 F.3d at 771.

The court's instructions were accurate statements of the law and adequately presented the issues to the jury. Final Jury Instruction Number 10[6] titled "Breach of Contract – Compensatory Damages" is derived directly from South Dakota Civil Pattern Jury Instruction (SDCPJI) §§ 50-00-10 and 50-70-10. *See* Docket 272 at 11; SDCPJI §§ 50-00-10, 50-70-10. In fact, Final Jury Instruction Number 10 follows SDCPJI § 50-70-10 almost word-for-word. Docket 272 at 11. Similarly, Final Jury Instruction Number 14 titled "Future Damages" is derived from SDCPJI § 50-120-10 and almost quotes the pattern

---

[6] At the settlement conference the breach of contract – compensatory damages instruction was numbered as instruction 9 and the future damages instruction was numbered instruction 12.

instruction. Docket 272 at 17. HRMC does not argue that the instructions themselves were inaccurate but instead argues that the jury mistakenly awarded future damages on the breach of contract claim in violation of South Dakota law. Docket 298.

### 1. Damages for Lost Wages

HRMC first argues that the jury's award of lost wages for each year from the time of Dr. Miller's resignation in 2011 to the present is improper because Dr. Miller cannot recover beyond her period of employment. Docket 291 at 8. In support of its argument, HRMC heavily relies on *Bad Wound v. Lakota Community Homes, Inc.*, 603 N.W.2d 723 (S.D. 1999).[7] In *Bad Wound*, the plaintiff alleged that he was wrongfully terminated from his employment. *Id.* at 724. At trial, the court made an evidentiary ruling and only permitted the jury to award damages for lost wages during the period of the plaintiff's employment contract. *Id.* On appeal, the South Dakota Supreme Court upheld the trial court and found that the plaintiff was not entitled to recover future loss of income beyond his three-year contract term because he was not entitled to more than he would have gained by full performance of the contract. *Id.* at 725. Thus, HRMC argues that Dr. Miller is not entitled to lost wages beyond her contract term.

---

[7] HRMC also cites cases from other jurisdictions that also stand for the proposition that an employee is not entitled to lost wages beyond the term of employment in the contract. *See, e.g.*, *Vosough v. Kierce*, 97 A.3d 1150, 1168 (N.J. Super. Ct. App. Div. 2014); *Kurnik v. Cooper Health Sys.*, 2008 WL 2829963, at *18 (N.J. Super. Ct. App. Div. July 24, 2008); *Smith v. Mich. State Univ.*, No. 202717, 1998 WL 1989867, at *1 (Mich. Ct. App. Sept. 29, 1998).

9

Here, Dr. Miller did not allege that HRMC wrongfully terminated her contract. Instead, Dr. Miller alleged that HRMC forced her to reduce her hospital privileges in violation of the provisions set forth in the Bylaws, and that the violation of the Bylaws caused Dr. Miller direct and consequential damages. More specifically, Dr. Miller claimed that the report to the NPDB stating that she voluntarily reduced her privileges—which was filed as a result of the breach of the Bylaws—caused her damages because she could not find other employment as a surgeon. Those are damages separate and distinct from damages resulting from a wrongful termination. Thus, the analysis in *Bad Wound* and the other wrongful termination cases cited by HRMC are irrelevant to this case.

In South Dakota, the measure of damages resulting from a breach of contract "is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." SDCL § 21-2-1. "[T]he ultimate purpose behind allowance of damages for breach of contract is to place the injured party in the position he or she would have occupied if the contract had been performed[.]" *Ducheneaux v. Miller*, 488 N.W.2d 902, 915 (S.D. 1992). Thus, Dr. Miller is entitled to compensatory damages resulting from HRMC's breach of its Bylaws.

At trial, Dr. Miller presented expert testimony that if she had not surrendered her hospital privileges and had merely been terminated, with or without cause, HRMC would not have been required to file a report with NPDB

10

and Dr. Miller would have been able to find other employment as a surgeon. In other words, if HRMC had not breached its Bylaws, Dr. Miller would have been terminated and she could then have found another position as a surgeon, incurring no damages. Instead, Dr. Miller was unable to find employment as a surgeon and had to take a lower paying position performing wound care. Thus, to put Dr. Miller in the position she would have been in had HRMC performed its obligations under the Bylaws, she was entitled to damages for lost wages because she had to take lower paying work as a wound care specialist.

### 2. Damages for Loss of Earning Capacity

HRMC also argues that Dr. Miller is not entitled to $343,640 in loss of earning capacity because South Dakota does not permit recovery of future damages on a breach of contract claim. Docket 298 at 8. Again, HRMC cites to *Bad Wound* as support for its argument. *Id.* As discussed above, *Bad Wound* involved an employee who brought a claim against his employer for wrongful termination and sought lost wages beyond the term of the employment contract. *Bad Wound*, 603 N.W.2d at 724. *Bad Wound* is not applicable to this case because Dr. Miller did not allege that HRMC violated her employment contract, did not allege that HRMC wrongfully terminated her, and did not seek lost wages that she would have received had she kept working at HRMC. Dr. Miller sought the lost wages that were the result of her being unable to find employment as a surgeon after leaving HRMC.

The South Dakota Supreme court has not previously ruled on whether a plaintiff may recover damages on a breach of contract claim. But it has

" 'emphasized that the object of compensatory damages is to make the injured party whole[,]' and we do not favor the adoption of 'blanket rule[s]' that exclude evidence of damages without first considering the circumstances in which those damages occurred." *Lamar Advert. of S.D., Inc. v. Heavy Constructors, Inc.*, 745 N.W.2d 371, 380 (S.D. 2008) (quoting *O'Bryan v. Ashland*, 717 N.W.2d 632, 639 (S.D. 2006)).In several scenarios dealing with compensatory damages, the South Dakota Supreme Court has declined to adopt hardline rules barring recovery and has instead analyzed whether the claim is "remote, speculative, or uncertain" and permitted the trier of fact to determine whether damages have been proven with reasonable certainty. *See, e.g.*, *Lamar*, 745 N.W.2d at 380 (finding that plaintiff could attempt to show at trial and by competent proof reasonably certain loss of net income); *O'Bryan*, 717 N.W.2d at 639 (finding that the circuit court did not err by permitting the issue of whether a plaintiff has been damaged by interest charged on unpaid tax liability to be presented to the jury); *City of Winner v. Bechtold Invs., Inc.*, 488 N.W.2d 416, 419 (S.D. 1992) (finding that the court could consider future damages in its calculation of compensatory damages in a condemnation action where there was competent evidence for the court to consider).

Because the South Dakota Supreme Court has previously indicated a preference for permitting the trier of fact to determine whether the plaintiff has proved future damages based on the particular circumstances in a case, this court finds that South Dakota law does not bar Dr. Miller's recovery of loss of earning capacity due to HRMC's breach of its bylaws. Thus, there has been no

plain error and the jury properly awarded Dr. Miller damages for her loss of earning capacity.

## II. New Trial

Defendant also moves for a new trial under Federal Rule of Civil Procedure 59 because the jury awarded damages on Dr. Miller's breach of contract claim that go beyond the term of her contract and are not permitted under South Dakota law and because Dr. Huntoon testified outside the scope of his expert disclosure. Docket 291 at 7-8. Under Rule 59, a new trial is required where there has been a miscarriage of justice. *Greaser v. Mo. Dep't of Corrs.*, 145 F.3d 979, 983 (8th Cir. 1998). Possible reasons justifying a new trial include a verdict that is against the weight of the evidence, an erroneous jury instruction, or an excessive damage award. *Children's Broad. Corp. v. Walt Disney Co.*, 245 F.3d 1008, 1017 (8th Cir. 2001). A court can grant a new trial based on an erroneous jury instruction "only 'if the error misled the jury or had a probable effect on its verdict.'" *Bamford, Inc. v. Regent Ins. Co.*, 822 F.3d 403, 410 (8th Cir. 2016) (quoting *Acuity v. Johnson,* 776 F.3d 588, 596 (8th Cir. 2015)).

### A. Future Damages on Breach of Contract

As previously discussed, HRMC's argument that South Dakota law prohibits Dr. Miller from recovering future damages on her breach of contract claim is unfounded. *Infra* Section I.B.1. *Bad Wound* is inapplicable to this case because Dr. Miller did not allege that HRMC breached her employment contract and the South Dakota Supreme Court has expressed its preference for

13

permitting the trier of fact to determine whether future damages have been proved with sufficient evidence. *Infra* Section I.B. Thus, the jury's award of future damages on Dr. Miller's breach of contract claim is not prohibited by South Dakota law and is not a miscarriage of justice.

## B. Dr. Huntoon's Expert Testimony

Finally, HRMC argues that a new trial is warranted because Dr. Huntoon testified outside the scope of his expert disclosure when he discussed how HRMC violated its Bylaws. Docket 291 at 15. At trial, HRMC did not object to any part of Dr. Huntoon's testimony being outside the scope of his expert disclosure. *See* Docket 288 at 16, 47. Thus, the court is precluded from reviewing the issue absent plain error. *See* Fed. R. Evid. 103(a); *McKeel v. City of Pine Bluff*, 73 F.3d 207, 211 (8th Cir. 1994).

Dr. Huntoon was qualified to testify as an expert in sham peer review, and HRMC argues that Dr. Huntoon improperly gave opinions as to "whether HRMC complied with the contractual provisions contained in the Bylaws." Docket 291 at 21. But in Dr. Huntoon's expert disclosure, he identified what provisions of the Bylaws were implicated, how HRMC violated those provisions, and how those types of tactics are characteristic of a sham peer review. Docket 62-1 at 39. For example, he identified that no "investigation" as defined in Section 10.2(e) of the Bylaws took place, that no "Investigating Committee Report" as required in Section 10.2(f) of the Bylaws was produced, and no appearance before the Medical Executive Committee as provided under Section 10.2(g) of the Bylaws ever took place. Docket 62-1 at 40. He also stated that

14

"HRMC violated Section I.C of HRMC Medical Staff Rules and Regulations." *Id.* Approximately six pages of Dr. Huntoon's expert disclosure detailed what provisions of the Bylaws were implicated in this case and how HRMC violated those provisions. Dr. Huntoon testified that, in his opinion, HRMC's violations of its Bylaws were indicative of a sham peer review. *Id.* at 39-45. Because Dr. Huntoon's testimony was fully disclosed and relevant to his opinion, there is no plain error.

In conclusion, the jury's award of lost wages and loss of earning capacity is not prohibited by South Dakota law. And Dr. Huntoon's testimony was not outside the scope of his expert disclosure. Thus, there was no miscarriage of justice and HRMC's motion for a new trial is denied.

**III. Remittitur**

In deciding whether to order remittitur, "the court applie[s] [South Dakota] substantive law to determine whether the jury's award was excessive." *Schaefer v. Spider Staging Corp.*, 275 F.3d 735, 737 (8th Cir. 2002). " '[T]he role of the District Court is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under Rule 59, whether a new trial or remittitur should be ordered.' " *Id.* at 738 (alteration in original) (quoting *Browning—Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278-79 (1989)). To grant a remittitur in South Dakota, the jury's award of compensatory damages "must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous, and such as manifestly show the jury

15

to have been actuated by passion, partiality, prejudice or corruption." *Stormo v. Strong*, 469 N.W.2d 816, 826 (S.D. 1991) (internal quotations and citations omitted).

After reviewing all of the evidence, the court finds that the jury's award of $586,617 for lost wages and $343,640 for loss of earning capacity is not the result of passion, partiality, prejudice, or corruption and the award is not unreasonable or outrageous. Dr. Miller presented expert testimony from a forensic economist, Don Frankenfeld, and introduced Exhibit 170. *See* Docket 279. Frankenfeld utilized Dr. Miller's federal tax returns when calculating her lost earnings and measured Dr. Miller's lost earnings from the date of termination through the date of trial subtracting her actual post-termination earnings from her actual pre-termination earnings. The jury's award for Dr. Miller's lost wages matched Frankenfeld's calculations contained in Exhibit 170. Docket 277.

Dr. Miller also presented expert testimony from a recognized professional in the field of hospital credentialing. The expert testified that Dr. Miller had the ability to secure privileges as a general surgeon if the reports from HRMC stating that Dr. Miller surrendered her privileges were not on her record in the NPDB. Also, two other witnesses testified about how NPDB reports can severely affect a surgeon's ability to obtain privileges. And Dr. Miller herself described the unsuccessful efforts she went through to secure employment after being terminated from HRMC.

16

Further, Frankenfeld offered expert opinion testimony about the present value of Dr. Miller's probable lost future earnings from the date of trial through the duration of Dr. Miller's life expectancy. Dr. Miller also presented evidence as to Dr. Miller's mitigation of her damages by offering testimony that wound care work was the most lucrative alternative form of employment considering her inability to obtain a position as a surgeon. Frankenfeld's expert opinion provided the jury a range of dollar amounts in exhibits 141 and 142 for Dr. Miller's future loss based on differing factual findings. The low end of the dollar amount was $145,423 and the high end of the range was $861,278. So the jury's award of $343,640 falls on the lower end of Frankenfeld's range. Thus, the court finds that the jury's award of damages was reasonable and supported by the evidence.

## CONCLUSION

In conclusion, the court finds that the jury's award of lost wages and loss of earning capacity is not prohibited by South Dakota law, Dr. Huntoon's testimony was within the scope of his expert disclosure, and the jury's award of compensatory damages was supported by the evidence and not excessive. Thus, HRMC's Motion for Remittitur or For New Trial (Docket 290) is DENIED.

DATED February 7, 2018.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE